## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2019, 10:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy Karozos
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re The Matter of:
My.B. and M.Q.,
Children in Need of Services

M.B. (Father),

*Appellant-Defendant,*

v.

Indiana Department of Child Services,

*Appellee-Plaintiff.*

February 28, 2019

Court of Appeals Case No.
18A-JC-2159

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Rosanne Ang, Magistrate

Trial Court Cause Nos.
49D09-1803-JC-714
49D09-1803-JC-715

**Brown, Judge.**

[1] M.B. ("Father") appeals the trial court's order determining that M.Q. and My.B. (the "Children") are children in need of services ("CHINS"). Father raises one issue which we revise and restate as whether the evidence is sufficient to support the court's determination. We affirm.

## Facts and Procedural History

[2] Father and K.A. ("Mother") have two children together, M.Q. who was born in April 2008 and My.B. who was born in October 2009. Father and Mother were divorced in March 2012. The court approved an agreement that Father and Mother share joint legal custody of the Children, Mother have physical custody, and Father have parenting time pursuant to the Indiana Parenting Time Guidelines. In March 2012, a CHINS action was filed after Mother's third child was born with THC and cocaine in her system.[1] In July 2017, Mother, her children, and M.A. came to the attention of the Department of Child Services ("DCS") based on a report of neglect which alleged that Mother and M.A. were involved in an accident with all of the children.

[3] On March 13, 2018, DCS filed a petition alleging that the Children and Mother's other children were CHINS. The petition alleged that Mother failed to provide her children with a safe, sanitary, and appropriate living environment free from substance abuse; that, on March 11, 2018, family case

---

[1] The court's CHINS determination order in this case indicates Mother has five children, Father is the father of the Children, and M.A. is the father of the other children. The children of Mother and M.A. were born in March 2012, May 2014, and May 2015.

manager Bailey Sandlin ("FCM Sandlin") "responded to a report due to [Mother] stating that the biological father was holding the children hostage in the attic"; that FCM Sandlin "observed the home to be in disarray with varying stages of food decay on the floor, dirty clothes, cat food, a rusted can opener, and a jagged can lid in reach of the children"; and that she observed fecal matter smeared across the wall. It also alleged that Mother was in jail on charges including disorderly conduct, resisting arrest, and neglect of a dependent; that the family has a history with DCS; that services were previously offered through CHINS actions; and that despite prior services Mother continued to demonstrate an inability to provide the children with a safe, drug-free home. The petition further alleged that Father and M.A. have not successfully demonstrated an ability and willingness to appropriately parent the children and are unable to ensure their safety and well-being while in the care of Mother. Appellant's Appendix Volume II at 51.

[4] The court held factfinding hearings in June 2018. Father testified that he did not feel the Children were safe in the custody of Mother. He testified that the last time he saw the Children was in July 2017 for two or three hours and that, prior to that, he had not seen the Children for about four or five years. When asked how long he had believed Mother was not an appropriate parent for the Children, Father replied "[a]bout four or five years," and when asked to explain his conclusion, he answered "[w]e had certain little confrontations and stuff," "we took it in our own hands to have visitation without CHINS and she got into [an] altercation with my sister and after that I got into an altercation with

her husband," "I was jumped and stabbed and after that stuff just started really going downhill and she was taking me away from the kids," "[e]very time I call she was hanging up on me, putting restraining orders on me," "I'd never even been to their house," and "[s]he's putting restraining orders on me, all kinds of stuff, threatening to arrest me." Transcript Volume II at 126-127. When asked if he wanted the Children in his custody, he answered affirmatively. When asked, "[s]ince 2012 have you ever filed any official paperwork asking for custody," Father answered "I did, but it never went through." *Id*. On cross-examination, Father indicated that, since this CHINS case opened in March, he had been visiting with the Children about twice a week. A DCS assessment family case manager testified that she received a report in July 2017 related to a car accident and indicated she was not able to speak with Father, because she could not locate him.

[5] On July 19, 2018, the court issued an order finding the Children were CHINS. The court found that, in March of 2012, a CHINS action was filed after Mother's third child was born with THC and cocaine in her system. It found that, in July 2017, Mother, M.A., and the children came to the attention of DCS based on a report of neglect which alleged that Mother and M.A. were "involved in an automobile accident with all of the children" and that "[a]t that time, [Mother] admitted that [M.A.] had purchased illicit substances and that she smoked 'the stick'." Appellant's Appendix Volume II at 145. The court found that, in March 2018, Mother and the children came to the attention of DCS based on a report alleging Mother was suffering from paranoid delusions;

that FCM Sandlin observed the condition of the home; and that, on the night of FCM Sandlin's assessment, Mother appeared to be under the influence of an illicit substance, displayed bursts of aggressive behavior, attempted to lunge at FCM Sandlin and had to be restrained by law enforcement, yelled to the children to come downstairs and save her from the police, and repeatedly yelled for her children to look at her while she was handcuffed and seated on the ground. The court further found that, upon removal, the children's belongings were extremely dirty, the children did not have matching shoes, none of their belongings could be transported with them due to being in poor condition, and the children had to be wrapped in blankets. It found that, during her supervised parenting time, Mother was not able to properly supervise the children and that Mother has been recommended to engage in a parenting assessment and parenting education. It noted that an individual therapist identified that Mother has mental health and substance abuse issues and that Mother meets with the therapist but has not taken any action to support change.

[6] The court found that Mother has a diagnosis of bipolar disorder, has been prescribed but is not currently taking medication, reports difficulty sleeping, has suffered from manic episodes and has displayed irrational and compulsive behavior, and has expressed feelings of excessive worry and extreme sadness. It found that Mother's therapist does not believe that the children can safely return to her care at this time due to her substance abuse and untreated mental state, and that the children, have been recommended to therapy to address their mental health needs and negative behaviors. The court further found that

Mother has recently used PCP and methamphetamine, and is employed but does not have sufficient income to support herself and all of the children.

[7]     The court also found:

> 33. [The children's] physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision. [Mother's] untreated substance abuse and mental health has resulted in her inability to provide the children with appropriate care and supervision. [Father] has not maintained contact with [the Children]. [M.A.] is incarcerated and is unable to provide care for [his children].
>
> 34. [The children] need care, treatment, or rehabilitation that the children are not receiving and is unlikely to be provided or accepted without the coercive intervention of the Court. As [Mother] has not voluntarily sought mental health and substance abuse treatment, the intervention of this Court is needed to compel her to do so. As [Father] has not taken any steps to maintain contact with his children, the intervention of the Court is needed to assist in developing his relationship with his children. . . . Lastly, the intervention of the Court is needed to ensure that the children receive the recommended therapy and appropriate care while their parents are addressing the above-stated issues.

*Id*. at 147. The court subsequently issued a dispositional order granting Father parenting time in his home and increased parenting time upon positive recommendations from DCS, the guardian ad litem, and service providers. It issued a parental participation order requiring Father engage in a home-based therapy program referred by the family case manager and follow all recommendations.

## *Discussion*

[8] The issue is whether sufficient evidence supports the trial court's determination that the Children are CHINS. Father argues that the finding that he did not maintain consistent contact with the Children is not supported by the record and that, although he was not able to exercise parenting time consistently before the CHINS filing, the opposite was true at the time of the factfinding hearing. He argues that "[c]ustody could have been decided in through the bundled cases" and that he "was not shown to be anything other than fit." Appellant's Brief at 15. He argues he was ready, willing, and able to care for the Children. In response, DCS contends that Father did not appear for the Children until this CHINS case was initiated, and that, because he has not taken the necessary steps to remedy Mother's failure to provide for the Children's needs up to this third instance of DCS involvement, despite his awareness of prior involvement, the court reasonably inferred that continued court involvement would be necessary. In reply, Father argues that Mother did not let him see the Children, that from the moment he was informed of the CHINS he did everything possible to have the Children placed with him, and that his lack of contact prior to the Children's removal from Mother is not a sufficient basis for a CHINS finding.

[9] In reviewing a trial court's determination that a child is in need of services, we neither reweigh the evidence nor judge the credibility of witnesses. *In re S.D.*, 2 N.E.3d 1283, 1286-1287 (Ind. 2014), *reh'g denied.* Instead, we consider only the evidence that supports the trial court's decision and reasonable inferences

drawn therefrom. *Id.* at 1287. As to issues covered by findings, we apply the two-tiered standard of whether the evidence supports the findings and whether the findings support the judgment. *Id.* We review remaining issues under the general judgment standard, under which a judgment will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.*

[10] Ind. Code § 31-34-1-1 provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

The CHINS statute does not require that a court wait until a tragedy occurs to intervene. *In re A.H.*, 913 N.E.2d 303, 306 (Ind. Ct. App. 2009). Rather, a child is a CHINS when he or she is endangered by parental action or inaction. *Id.* A CHINS determination establishes the status of a child alone. *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). Because a CHINS determination regards the status of the child, a separate analysis as to each parent is not required in the CHINS determination stage. *Id.* The conduct of one parent can be enough for

a child to be adjudicated a CHINS. *Id.* The purpose of a CHINS adjudication is to protect children, not punish parents. *Id.* The resolution of a juvenile proceeding focuses on the best interests of the child, rather than guilt or innocence as in a criminal proceeding. *Id.*

[11] We note that Father does not challenge the trial court's findings regarding the CHINS action in 2012, the accident involving Mother and the Children in 2017, Mother's mental health diagnosis and drug use, or the reasons for the Children's removal in 2018. Further, he does not dispute the court's findings regarding the condition of the home in which the Children were living, that the Children's belongings could not be transported and they had to be wrapped in blankets at the time of removal, and that the Children have been recommended to therapy to address their mental health needs and negative behaviors. The court additionally found that Father has not maintained consistent contact with the Children, the most recent time he visited the Children prior to the filing of this CHINS action was for a few hours in July 2017, and prior to that he had not seen the Children in four or five years. The record reveals that testimony was elicited from Father at the factfinding hearings which supports these findings. Also, Father indicated that he has believed Mother is not an appropriate parent for four or five years and has felt that the Children are not safe with her. To the extent Father stated that he filed paperwork for custody but it never went through, that Mother prevented him from seeing the Children, or that he participated in visitation after the CHINS case was filed, we note that the record reflects that Mother and Father shared joint legal custody and that

the trial court was able to consider Father's testimony and the extent to which it affected whether the Children required care they were unlikely to be provided without the court's intervention.

[12] While the fact that Father did not have contact with the Children for a number of years may not, standing alone, render the Children CHINS, we cannot conclude that the court was precluded from considering this fact, together with the evidence regarding the care provided by Mother of which Father was aware at least in part, in determining whether the Children were in need of care, treatment, or rehabilitation that they were not receiving and were unlikely to be provided without the coercive intervention of the court. *See* Ind. Code § 31-34-1-1. The evidence related to Mother, Father, and the Children's needs supports the court's determination that the Children were in need of services and the coercive intervention of the court was necessary.

[13] For the foregoing reasons, we affirm the trial court's determination that the Children are CHINS.

[14] Affirmed.

Bailey, J., and Bradford, J., concur.